## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **MICHAEL WADE NANCE,** | * | **CIVIL ACTION NO.** |
| | * | **1:20-CV-00107-JPB** |
| **PLAINTIFF,** | * | |
| **v.** | * | |
| | * | |
| **TIMOTHY C. WARD,** | * | |
| **Commissioner,** | * | |
| **Georgia Dep't of Corrections, and** | * | |
| | * | |
| | * | |
| **BENJAMIN FORD, Warden,** | * | |
| **Georgia Diagnostic and** | * | |
| **Classification Prison,** | * | |
| | * | |
| **DEFENDANTS.** | * | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**CHRISTOPHER M.  CARR**     112505
**Attorney General**

**BETH A. BURTON**     027500
**Deputy Attorney General**

**SABRINA GRAHAM**     305755
**Senior Assistant Attorney General**

**CLINT C. MALCOLM**     745116
**Assistant Attorney General**

Comes now, Defendants Benjamin Ford and Timothy C. Ward, by and through counsel, Christopher M. Carr, Attorney General for the State of Georgia, and file their Motion to Dismiss Plaintiff's Complaint under 42 U.S.C. § 1983, showing the Court as follows:

## I. INTRODUCTION

Plaintiff Michael Wade Nance alleges that Georgia's lethal injection protocol, as applied to him, will violate his Eighth and Fourteenth Amendment rights when he is executed by lethal injection. More specifically, Nance alleges two primary "as-applied" challenges: (1) that his veins are compromised and unsuitable for intravenous access, which increases the risk that intravenously administered pentobarbital will leak into his veins, or that if his veins are not suitable at the time of execution, he will undergo a central venous cannulation procedure—a contingency accounted for in Georgia's lethal injection protocol; and (2) that he has been taking the drug, gabapentin, since April 2016, which will render the compounded pentobarbital administered during his execution unreliable.

As a solution, Nance suggests Defendants could avoid these issues by implementing a readily available alternative to lethal injection—death by firing squad. Nance asks this Court to enter a declaratory judgement that Defendants' current execution protocol violates his Eighth and Fourteenth

Amendment rights and to grant injunctive relief to enjoin the Defendants from proceeding with Nance's execution by lethal injection.[1]

Nance's complaint should be dismissed for three main reasons: (1) his claims are time-barred because he failed to raise them within the two-year statute of limitations; (2) his complaint fails to state a claim upon which relief can be granted, as he failed to allege sufficient facts to render it plausible that: (a) the lethal injection protocol in question creates a substantial risk of serious harm; and (b) a firing squad is a known and available alternative method of execution that is feasible, readily implemented, and that will in fact significantly reduce the substantial risk of severe pain; and (3) he failed to properly exhaust his remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, with the Georgia Department of Corrections ("GDC

## II. STATEMENT OF THE CASE

On September 26, 1997, following a jury trial in Gwinnett County, Georgia, Nance was convicted of malice murder, felony murder, aggravated

---

[1] Nance is not currently scheduled for execution, as he has a pending petition for writ of certiorari with the United States Supreme Court following the Eleventh Circuit Court of Appeals' affirmance of this Court's denial of federal habeas corpus relief. *See Nance v. Ford, Warden*, No. 19-6918 (U.S. filed Dec. 12, 2019).

assault, theft by taking, criminal attempt to commit armed robbery, and possession of a firearm during the commission of a crime, and he was sentenced to death for malice murder. *Nance v. State*, 272 Ga. 217 (2000). On direct appeal, the Georgia Supreme Court affirmed Petitioner's convictions but reversed his death sentence and remanded the case for resentencing. *Id*. The United States Supreme Court denied Nance's petition for writ of certiorari on October 16, 2000. *Nance v. Georgia*, 531 U.S. 950 (2000).

On September 20, 2002, following his resentencing jury trial in Gwinnett County, Nance was sentenced to death again. *Nance v. State*, 280 Ga. 125 (2005). This time on direct appeal the Georgia Supreme Court affirmed Nance's death sentence. *Id*. The United States Supreme Court denied Nance's petition for a writ of certiorari on October 2, 2006. *Nance v. Georgia*, 549 U.S. 868 (2006).

Nance filed a state habeas corpus petition in Butts County, Georgia, on March 8, 2007, challenging his Gwinnett County convictions and death sentence. An evidentiary hearing was held on August 19-21, 2008, after which the state habeas court entered an order on September 6, 2012, denying relief with respect to Nance's convictions but vacated Nance's death sentence.

On June 17, 2013, the Georgia Supreme Court reversed the state habeas court's grant of relief and reinstated Nance's death sentence. *Humphrey v. Nance*, 293 Ga. 189 (2013). The United State Supreme Court denied Nance's petition for writ of certiorari on January 27, 2014. *Nance v. Chatman*, 571 U.S. 1177 (2014).

After completing the state collateral review process, Nance, on December 27, 2013, filed his federal habeas corpus petition. This Court denied relief on Nance's federal habeas petition on August 7, 2017. The Eleventh Circuit Court of Appeals affirmed the district court's denial of relief on April 30, 2019. *Nance v. Warden, Ga. Diagnostic Prison*, 922 F.3d 1298 (11th Cir. 2019). Nance filed a petition for writ of certiorari with the United States Supreme Court on December 9, 2019, which is still pending, as the Warden's response is due on February 12, 2020. *Nance v. Ford, Warden*, No. 19-6918 (U.S. filed Dec. 12, 2019).

### III. STATEMENT OF THE FACTS

The Georgia Supreme Court summarized the facts of Nance's crimes as follows:

> The evidence presented at the guilt/innocence phase of the 1997 trial showed the following. Nance stole a 1980 Oldsmobile Omega and drove to a bank in Gwinnett County on December 18, 1993. After entering the bank at approximately 11:00 a.m., Nance pulled

a ski mask over his face, waved a .22 caliber revolver, and demanded that the tellers place cash in two pillowcases that he was carrying. Nance made several threats to the tellers, including threatening to kill them if they used dye packs. The tellers nevertheless slipped two dye packs into the pillowcases with the money. Nance exited the bank and got into the Omega where the dye packs detonated, emitting red dye and tear gas. Grabbing a black trash bag containing the gun, Nance abandoned the Omega and went across the street to a liquor store parking lot where Gabor Balogh was backing his car out of a parking space. Dan McNeal, who had just left the liquor store behind Balogh, was standing nearby. He saw Nance run around the front of Balogh's car, yank open the driver's door, and thrust his right arm with the plastic bag into Balogh's car. Then McNeal heard arguing and Balogh saying, "no, no, no," as he leaned away from Nance and raised his left arm defensively. Nance shot Balogh in the left elbow, and the bullet entered his chest and caused his death a short time later. Nance then pointed the gun at McNeal and demanded his keys. Instead of complying, McNeal ran around the side of the liquor store. Nance fired another shot, but McNeal was not hit. Nance then ran around the opposite side of the liquor store, confronted McNeal behind the store, and pointed the gun at him. As McNeal ran back to the front of the store, Nance turned and ran to a nearby Chevron station, where he entered into a standoff with police, telling them, "If anyone rushes me, there's going to be war." Over an hour passed before police persuaded Nance to surrender. The State also presented evidence that Nance had robbed another Gwinnett County bank three months earlier where he had made a similar threat to kill the teller and that he had pleaded guilty in federal court to committing both Gwinnett County bank robberies.

*Nance v. State*, 272 Ga. 217 (2000).

# IV.  ARGUMENT AND AUTHORITY

## A.    Nance's Claims Are Time-Barred

An untimely complaint filed under § 1983 cannot succeed on the merits. *Ledford v. Comm'r, Ga. Dep't of Corr.*, 856 F.3d 1312, 1315 (III), 1318 (V) (11th Cir. 2017). A challenge to a state's method of execution brought under § 1983 is subject to the statute of limitations governing personal injury actions in the state where the challenge was brought. *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 872-76 (III)(B) (11th Cir. 2017); *Gissendaner v. Ga. Dep't of Corr.*, 779 F.3d 1275, 1280 (II) (A) (11th Cir. 2015). Nance's § 1983 complaint was brought in Georgia, so Georgia's two-year statute of limitations period for personal injury actions must be applied by this Court. *Id*. The statute of limitations is an affirmative defense, so a dismissal under Federal Rule of Civil Procedure 12(b)(6) on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred. *Id*.

### (1) Nance's general "method-of-execution" claims are time-barred and should be dismissed.

In addition to his two primary "as-applied" challenges, Nance also

raises some general "method-of-execution" claims. He alleges that the

following "are sure or very likely" to cause him "needless pain and

suffering[:]"

> unknown and untested quality, potency, purity and stability of the
> compounded pentobarbital; the execution team's inadequate skill,
> experience, and training; and other problematic elements of the
> Protocol as applied to Nance (i.e., long tubing, remote injection,
> alternatives to intravenous access).

(Doc. 1, p. 19). Nance also alleges that the alternative to intravenous access is

central venous cannulation and that members of the execution team lack the

skills and experience to comply with this portion of Georgia's lethal injection

protocol. *Id.* at 17-18. Nance also alleges that if the drug is administered

inconsistently or inadequately he may survive and have to go through the

process again. *Id.* at 18. He also alleges that central venous cannulation

would cause excruciating pain. *Id.* at 19.

"Method-of-execution" claims accrue on the later of two dates: (1) the

date the death sentence becomes final; or (2) the date on which the capital

litigant becomes subject to a new or substantially changed execution protocol.

*Boyd*, 856 F.3d at 873. Nance's convictions and death sentence became "final"

following the Georgia Supreme Court's affirmance of his death sentence after

his resentencing trial in Gwinnett County. More specifically, his death

sentence was "final" when the United States Supreme Court denied Nance's

petition for a writ of certiorari on October 2, 2006. *Nance v. Georgia*, 549 U.S. 868 (2006). Georgia adopted lethal injection as its method of execution in October 2001. *Ledford*, 856 F.3d at 1315 (citing O.C.G.A. § 17-10-38(a)).[2]

The date Nance's death sentence became "final" is the later of the two dates. Nance's method-of-execution claims accrued on October 2, 2006. He then had two years, or until October 2, 2008, to file such claims. *Id.* Instead, Nance waited until January 2020, over eleven years too late, to file these method-of-execution claims. This Court must dismiss all of these "method-of-execution" claims without an inquiry into their merits. *See Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1260, 1263-64 (III)(A) (11th Cir. 2014); *Ledford*, 856 F.3d at 1315 (III). All of these claims are clearly time-barred as apparent from the complaint and should be dismissed.

**(2) Nance's "as-applied" challenges are also time-barred and should be dismissed.**

Nance's primary claims are "as applied" challenges to Georgia's lethal injection protocol, i.e, Nance alleges: (1) that his veins are compromised and

_____

[2] Georgia switched from using a single dose of FDA-approved pentobarbital to using a single dose of compounded pentobarbital in March 2013. *Ledford*, 856 F.3d at 1315. O.C.G.A. § 42-5-36(d)(2), Georgia's execution confidentiality statute, went into effect in July 2013. *Id*. However, as held by the Eleventh Circuit, these changes made in 2013 are not substantial changes to Georgia's execution protocol and do not extend the statute of limitations for Nance's "method-of-execution" claims. *Id*.

unsuitable for intravenous access, which increases the risk that intravenously administered pentobarbital will leak into his veins, or if his veins are not suitable, that he will undergo a central venous cannulation procedure, a contingency accounted for in Georgia's lethal injection protocol; and (2) that he has been taking the drug, gabapentin, since April 2016, which will render the compounded pentobarbital administered during his execution unreliable.

For such claims, the statute of limitations does not begin to run until the facts which would support the cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights. *See McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) (citing *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987). *See also, e.g., Ledford*, 856 F.3d at 1316 (Ledford had been taking gabapentin for approximately a decade, thus his § 1983 claim about the interaction between gabapentin and pentobarbital was filed too late); *Siebert v. Allen*, 506 F.3d 1047, 1049 (11th Cir. 2007) (Siebert's diagnosis of pancreatic cancer and hepatitis C was not in place until late May 2007).

It is apparent from the face of Nance's complaint that his "as-applied" claims became apparent before two years ago; thus, this Court should dismiss those claims as time-barred.

10

### (a) "As-applied" challenge concerning interaction between gabapentin and pentobarbital

Nance admits in the complaint that he has been administered the drug gabapentin to treat his back pain since April 2016. (Doc. 1, p. 14). Thus, the facts which would support this "as-applied" challenge became apparent to him in April 2016, which was when the statute of limitations accrued. Nance had two years, or until April 2018, to pursue such a claim. He failed to pursue such a claim until he filed this complaint in January 2020, which was filed approximately 21 months too late. *See Ledford*, 856 F.3d at 1316. Therefore, this claim is clearly time-barred as apparent from the complaint and should be dismissed.

### (b) "As-applied" challenge concerning compromised veins

Nance claims that his veins are: severely compromised, difficult-to-locate, heavily scarred, tortuous, irregular, and thin. (Doc. 1, pp. 10, 11, 16). Nance also claims that on or around May 2019 he was told by a medical technician at the prison that the execution team would have to cut his neck to carry out the execution because they would not otherwise be able to obtain sustained intravenous access. *Id.* at 10-11. Nance also claims that on October 28, 2019, an anesthesiologist examined him and revealed that he had "no

discernible veins on visual examination in his forearm, in his left or right antecubital fossa, or in his lower extremities. *Id*. at 11.

Nance's complaint is silent as to the underlying medical cause of his allegedly compromised veins or when he became aware, or should have become aware, of his allegedly compromised veins. Without sufficient factual pleading to establish when Nance's veins became compromised, it is plausible that any medical condition that would cause such serious problems with one's veins to prevent intravenous access by a medical professional would have been apparent to Nance many years ago. It is extremely noteworthy that Nance alleges that his veins are not only compromised, but that they are heavily scarred, tortuous, and irregular. (Doc. 1, p. 16). Of course, he offers no sufficient factual pleading to support such conclusory statements. But his use of such language would lead a reasonable jurist to conclude, using his common sense and experience, that heavily scarred veins only became that way over the course of years due to some type of disease or serious medical ailment. Thus, Nance's statute of limitations would have accrued years ago, and these claims are also time-barred.

### (c) **Nance's firing squad claims are also time-barred.**

Because the underlying facts supporting Nance's claims were apparent or should have been apparent to him years ago, his supporting claims that he

should be executed by firing squad should also be dismissed as time-barred. Nance admits in his complaint that Utah has executed inmates by firing squad, as recently as July 18, 2010. (Doc. 1, p. 20). Thus, he knew or could have known about the underlying claim of a firing squad as an alternative method for execution no later than 2010. The statute of limitations accrued no later than July 18, 2010, and he had two years to raise such claims in a § 1983 complaint. Instead, he waited until 2020 to raise such claims. Consequently, Nance's claim that execution by firing squad is an alternative method of execution is also time-barred. *See Ledford*, 256 F.3d 1312, 1319 (Ledford asserted the firing squad claims well beyond the two-year statute of limitations, so those claims were dismissed as untimely).

Accordingly, all of Nance's claims are time-barred, and his entire complaint should be dismissed.

## B. Nance's Complaint Fails to State a Plausible Claim for Relief

Nance's entire complaint should also be dismissed because he fails to state a plausible claim for relief. Nance's claims are wholly speculative and conclusory and should be dismissed under Federal Rules of Civil Procedure 8 and 12(b)(6).

### 1. Standard of review for "as-applied" Eighth Amendment execution claims

The Eleventh Circuit has laid out the standard a plaintiff must satisfy to succeed in an Eighth Amendment "method-of-execution" challenge to a lethal injection protocol.

> [A] prisoner must establish an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment. That requires the prisoner to show two things: (1) the lethal injection protocol in question creates a substantial risk of serious harm, and (2) there are known and available alternatives that are feasible, readily implemented, and that will in fact significantly reduce the substantial risk of severe pain.

*Gissendaner*, 779 F.3d at 1283. Showing a slightly or marginally safer alternative is insufficient to mount a successful challenge to a State's method of execution. *West v. Warden*, 869 F.3d 1289, 1293 (11th Cir. 2017) (citing *Baze v. Rees,* 553 U.S. 35, 51 (2008)). The Constitution requires avoidance of a substantial risk of serious harm. *Glossip v. Gross*, 135 S.Ct. 2726, 2733 (2015). But, some risk of pain is inherent in any method of execution, and the Constitution does not require the avoidance of all risk of pain. *Id.* at 2733.

The standard required for an "as-applied" Eighth Amendment challenge is not substantially different from the standard in a general method-of-execution challenge. A plaintiff raising an "as-applied" challenge must demonstrate: (1) that the lethal injection protocol, as applied to him, creates a

14

substantial risk of serious harm; and (2) satisfy the readily available

alternative requirement. *Arthur v. Comm'r, Ala. Dep't of Corr.*, 840 F.3d

1268, 1305-06 (XVI) (11th Cir. 2016).

## 2. Standard of review for a dismissal under Rule 8 and Rule 12(b)(6)

The Eleventh Circuit has laid out the standard for a motion to dismiss

under Rule 12(b)(6) in the context of an Eighth Amendment challenge to a

lethal injection protocol.

> A plaintiff may survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if the factual allegations in the Complaint give rise to a plausible claim for relief. For a claim to be plausible, the supporting factual matter must establish more than a mere possibility that the plaintiff is entitled to relief. In determining whether a plaintiff has met this burden, the Court must assume all of the factual allegations in the Complaint to be true. The Court, however, need not accept as true any legal conclusions found in the Complaint.

*Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 803 F.3d 565, 571 (II) (11th Cir.

2015).

To satisfy the plausibility requirement, Nance must plead enough facts

to state a claim for relief that is plausible on its face. *Id*. at 568. Under Rule

8, there must be more than a "sheer possibility" that Nance's allegations are

true. *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff cannot

rely on naked assertions devoid of further factual enhancement. *Id*. Where a

complaint pleads facts that are merely consistent with a defendant's liability,

15

it stops short of the line between possibility and plausibility of entitlement to relief. *Iqbal*, 556 U.S. at 678. The complaint "must include enough facts to raise a right to relief above the speculative level." *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 864 (11th Cir. 2017). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Bell Atlantic Corp. V. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Boyd*, 856 F.3d at 864.

To determine whether an action fails to state a claim upon which relief can be granted, this Court must engage in a two-step inquiry. First, this Court "should eliminate any allegations in the complaint that are merely legal conclusions." *Id.* Second, "where there are well-pleaded factual allegations, [this Court should] assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* This is a context-specific task that requires this Court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 680.

### 3. Nance's complaint should be dismissed for failure to state a claim for relief.

Based on the applicable standard of review, Nance has failed to allege a plausible claim for relief, as his grounds are completely conclusory and speculative, and his claims do not plausibly give rise to an entitlement of relief. Thus, his complaint should be dismissed under Rule 8 and Rule 12(b)(6).

Even when viewing Nance's "as-applied" challenges in the light most favorable to him, his claims do not establish a substantial risk of serious harm. "Where an Eighth Amendment challenge alleges the risk of future harm, the conditions presenting the risk must be sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers." *Gissendaner*, 779 F.3d at 1283. Neither of Nance's "as-applied" challenges meet that burden.

### (a) "As-applied" challenge concerning Nance's veins

Nance alleges that his veins are compromised and unsuitable for intravenous access as required under Georgia's lethal injection protocol, and that there is a substantial risk his veins will lose their structural integrity during his execution. However, Georgia's lethal injection protocol accounts for the possibility of an inmate's veins being compromised. (Doc. 1-1, p. 7). "If the

veins are such that intravenous access cannot be provided, a Physician will provide access by central venous cannulation or other medically approved alternative." *Id*. Thus, simply alleging that one's veins are compromised does not sufficiently plead a condition that will very likely cause "serious illness and needless suffering, and give rise to sufficiently imminent dangers" under Georgia's execution protocol. *See Gissendaner*, 779 F.3d at 1283. If at the time of his execution, Nance's veins truly are such that intravenous access cannot be provided, there is a medically approved contingency in place under Georgia's lethal injection protocol. Simply speculating about a contingency that is accounted for in Georgia's protocol is not a sufficient pleading of plausible factual allegations to survive a dismissal motion. *See Gissendaner*, 779 F.3d at 1283.

Gissendaner raised an "as-applied" Eighth Amendment challenge that the IV team was not qualified to establish reliable intravenous access for a prisoner like her, i.e., one who is female, obese, and at risk for obstructive sleep apnea. *Gissendaner*, 779 F.3d at 1279. Gissendaner based her contention on two sets of documents: (1) a set of newspaper articles about executions in other states where intravenous access was allegedly a problem; and (2) an affidavit from Dr. Joel Zivot stating his opinion that her medical conditions provided a risk to her during her execution. *Id*.

18

Contrastingly, Nance fails to offer any similar factual support for his conclusory allegations. Nance offers no factual allegations about: (1) what caused his alleged medical problems with his veins; (2) how this alleged medical condition adversely affects intravenous access; (3) how long he has been aware of the alleged problems with his veins; (4) any facts concerning how the alleged medical condition causing his veins to be compromised would likely cause a substantial risk of harm at execution; or (5) why it is plausible that central venous cannulation would actually be required at his execution. Nance simply alleges that his veins are compromised and speculates that he will likely suffer a substantial risk of harm when executed. Gissendaner indisputably offered more detail and factual pleading than Nance in support of her alleged "as-applied" challenge, yet the Eleventh Circuit still upheld the district court's dismissal of her claim and determined that Gissendaner failed to state a plausible claim for relief. *Id.* at 1283. This Court should apply that same precedent and dismiss this "as-applied" claim.[3]

---

[3] As stated earlier, the contingency for central venous cannulation is accounted for in Georgia's lethal injection protocol. (Doc. 1-1, p. 7). Simply pleading that it is possible that the execution team may not be able to find a vein and, thus, would have to administer pentobarbital through central venous cannulation is wholly speculative and fails to state a plausible claim for relief. The Eleventh Circuit has upheld the dismissal of a similar claim before, and that precedent is binding on this Court. *See Gissendaner*, 779 F.3d at 1283. This is especially true seeing that Nance has failed to plausibly

### (b) "As-applied" challenge concerning interaction between gabapentin and pentobarbital

Nance alleges that the interaction between gabapentin, the drug he says he has been taking since April 2016 for back pain, and pentobarbital, at the time of his execution, will cause him a substantial risk of harm. For similar reasons as stated above, this claim also fails to state a plausible claim for relief. Nance offers only the conclusory statement that due to his prolonged use of gabapentin, pentobarbital's capacity to render him unconscious and insensate during his execution will be diminished and that he will feel the pains of respiratory distress and organ failure. (Doc. 1, p. 15). Nance alleges no facts whatsoever that his use of gabapentin will somehow adversely interact with the lethal dose of pentobarbital he will be administered during execution. Instead, Nance offers rank speculation to support this claim, which is insufficient to state a claim for relief that is plausible on its face. The plausibility standard requires more than simply alleging something that is conceivable in theory. *Iqbal*, 556 U.S. at 680.

Any death-sentenced inmate awaiting execution could conceive of some circumstance, as applied to him, which might somehow adversely affect his eventual execution. However, simply speculating that a medication may

allege a feasible execution alternative, as firing squad is not such an alternative in Georgia. *See Boyd*, 856 F.3d at 865-872.

somehow adversely interact with the efficacy of pentobarbital at the time of execution is not enough to survive a motion to dismiss. Even assuming everything in Nance's complaint concerning gabapentin was true, he has not stated a plausible claim for relief, as he has not plausibly alleged that the lethal injection protocol, as applied to him, creates a substantial risk of serious harm. *See Ledford*, 856 F.3d at 1317 (Ledford was executed by lethal injection after the Eleventh Circuit rejected his claim concerning the interaction between gabapentin and pentobarbital, and Nance fails to allege any plausible facts to suggest that there were any complications with Ledford's execution).

### (c) "As-applied" challenge concerning firing squad

Finally, Nance's complaint should be dismissed under Rule 8 and Rule 12(b)(6) because he has "not alleged sufficient facts to render it plausible that a firing squad is a feasible and readily implemented method of execution in Georgia that would significantly reduce a substantial risk of severe pain." *Ledford*, 856 F.3d at 1318 (V). Regardless of whether he has sufficiently plead his "as-applied" challenges in regards to a substantial risk of serious harm, this Court should dismiss this complaint because his claim that a firing squad is a feasible, alternative method of execution in Georgia will never state a claim for relief under current Georgia law.

21

Nance alleges that execution by firing squad would be an alternative method of execution that is "feasible and readily implemented which will significantly reduce or eliminate the substantial risk of severe pain." (Doc. 1, p. 20). Nance also alleges that Utah has carried out three executions by firing squad and contends that Utah's protocols are readily known and available. *Id*. Nance provides no facts concerning Utah's firing squad execution protocol, and he provides no facts concerning the manner in which Georgia could feasibly and readily implement such an alternative method of execution. *Id*. at 20-22. Instead, he speculates that Georgia "could easily identify qualified personnel to carry out an execution by firing squad" and that Georgia "has a sufficient stockpile or can readily obtain both the weapons and ammunition necessary to carry out [an execution by firing squad]." *Id*. at 21. Nance also speculates that:

> [E]xecution by firing squad is both swift and virtually painless. If performed properly, the use of a firing squad will eliminate the substantial risk of severe pain that Defendants' current execution protocol presents to Mr. Nance. Evidence and recent experience strongly suggest that the firing squad is significantly more reliable than lethal injection.
>
> Accordingly, an execution by firing squad is a known and available alternative method of execution that presents a substantially lower risk of pain and suffering to Mr. Nance that Defendants' Protocols for lethal injection.

*Id*. at 21.

Nance's claims are the epitome of conclusory speculation, which should not survive a motion to dismiss. Nance has not pled sufficient facts to render it plausible that a firing squad would "significantly reduce a substantial risk of severe pain." *See Glossip*, 135 S. Ct. at 2737. Just as in *Boyd*, Nance's "allegations that execution by firing squad [] entail a lesser risk of pain than [Georgia's] current lethal injection protocol '[is] nothing more than bare-bone legal conclusions unsupported by facts.'" *Boyd*, 856 F.3d at 863.

But even if he alleged these firing squad claims with more specificity and included details of Utah's firing squad protocol, his complaint would still be subject to dismissal. Georgia is under no constitutional obligation to experiment with execution by firing squad when it has in place a detailed lethal injection protocol to ensure humane executions.[4] *Ledford*, 856 F.3d at 1318 (V). Nance is under an obligation to plead sufficient facts to render it plausible that execution by firing squad is a known and available alternative that is feasibly, readily implemented, and that will in fact significantly reduce the substantial risk of severe pain. *See Boyd*, 856 F.3d at 872;

---

[4] The Supreme Court has recognized that executions by hanging, firing squad, the electric chair, and the gas chamber have given way to more humane ways of execution, resulting in the modern day consensus on lethal injection execution protocols like the one in place in Georgia. *Ledford*, 856 F.3d at 1318 (citing *Baze*, 553 U.S. at 62). Nance's conclusory statement that execution by firing squad presents a substantially lower risk of pain should also be dismissed, as it fails to state a plausible basis for relief.

23

*Gissendaner*, 779 F.3d at 1283. There is no execution protocol in Georgia for execution by firing squad and carrying out an execution by an antiquated method like a firing squad would be illegal in Georgia. *See Boyd*, 856 F.3d at 868-872.

The second prong of *Glossip* "requires that a proposed alternative method of execution be "'known and available' -- or, as the [Supreme] Court also puts it, 'feasible [and] readily implemented.'" *Boyd*, 856 F.3d at 867 (citing *Glossip*, 135 S. Ct. at 2737 (quoting *Baze*, 553 U.S. at 52, 61)).

> Feasible means capable of being done, executed, or effected. And readily means with fairly quick efficiency, without needless loss of time, reasonably fast, or with a fair degree of ease. [] Moreover, the method of execution must be feasible and readily implemented for the state seeking to carry out the execution. Accordingly, for a proposed method of execution to satisfy *Glossip*'s second prong, the state must be able to implement and carry out that method of execution relatively easily and reasonably quickly, and in a manner that "in fact significantly reduces a substantial risk of severe pain" relative to the intended method of execution.

*Id.* at 868 (internal punctuation and citation omitted).

Boyd asserted that firing squad or hanging was an alternative feasible execution method although, neither Alabama's execution protocol, nor its legislative authority provided for these methods of execution. *Id.* at 872. In the absence of legislative intervention, the state courts in Alabama had no authority to order Boyd, or anyone else, to be executed by firing squad or

24

hanging. *Id.* "Considering the legal obstacles that would prevent the [Alabama Department of Corrections] from carrying out Boyd's execution by hanging or firing squad, as well as the many factual deficiencies in Boyd's pleading," the Eleventh Circuit had "little trouble concluding that Boyd has failed to state an Eighth Amendment claim." *Id.* at 868, 872.

Similarly, in Georgia, there is also no protocol for execution by firing squad. O.C.G.A. § 17-10-38(a) requires all persons sentenced to death in Georgia to be executed by lethal injection. Just as in *Boyd*, neither a state court in Georgia, nor the Georgia Department of Corrections, can change state law to include a firing squad. Georgia's statutory authority explicitly sets lethal injection as the manner of execution and the state courts have no authority to order Nance's execution by any other means.

Nance's claims concerning a firing squad as an alternative method of execution fall far short of sufficiently pleading facts to satisfy the plausibility burden required to survive a motion to dismiss. *See Boyd*, 856 F.3d at 865-872; *Arthur*, 840 F.3d at 1320; *Gissendaner*, 779 F.3d at 1283. The "readily available alternative" prong is required for "as-applied" challenges. *Gissendaner*, 803 F.3d at 568. Nance fails to sufficiently plead facts to plausibly show he can state a claim for relief concerning this "alternative" prong of any of his constitutional challenges to Georgia's lethal injection

protocol. Because he cannot satisfy his pleading burden concerning an essential prong of his claim, his complaint should be dismissed. *See Boyd*, 856 F.3d at 865-872; *Arthur*, 840 F.3d at 1320; *Gissendaner*, 779 F.3d at 1283.

Accordingly, this Court should dismiss all of Nance's claims as insufficiently pled under Rule 8 and because they fail to state a claim for relief under Rule 12(b)(6).[5]

## C.   Nance's complaint should also be dismissed because he failed to exhaust his remedies with GDC.

Nance has not exhausted his remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. Although Nance filed a grievance, which has been denied by GDC, he has failed to appeal GDC's denial. More importantly, Nance failed to raise the same condition of confinement challenges in his grievance that he now raises in this § 1983 complaint.

GDC's grievance procedure has two steps: (1) the inmate's filing an original grievance; and (2) a central office appeal. *See* Attachment A. First, the inmate must request relief by delivering to any counselor a completed

---

[5] Nance raises some general "method-of-execution" claims in his complaint, e.g., unknown and untested quality, potency, purity and stability of the compounded pentobarbital; the execution team's inadequate skill, experience, and training; and other problematic elements of the Protocol as applied to Nance (i.e., long tubing, remote injection, alternatives to intravenous access). (Doc. 1, pp. 17-19). These claims should also be dismissed because they fail to state a plausible claim for relief under Rule 8 and Rule 12(b)(6) for the same reasons enumerated throughout Section B of this pleading.

and signed grievance form. *Id.* The counselor then forwards the grievance form to a grievance coordinator who will screen the form and determine whether the Warden should accept or reject the grievance. *Id.* If the grievance coordinator determines that the Warden should reject the grievance, the Warden must review the recommendation before making a decision. *Id.* If the Warden rejects the grievance, the Warden sends the rejection back through the appropriate channels eventually to the inmate who may then appeal the Warden's rejection to the Central Office. *Id.*

On November 26, 2019, Nance filed a grievance stating:

The Georgia Dept of Corrections will violate my rights under the First, Eighth, and Fourteenth Amendments to the U.S. Constitution & Georgia Constitution by attempting to execute me under its current method of execution. GDC intends to execute me with lethal injection drugs from unknown sources that have previously proven defective. They are concealing the syringe and nature of the drug and the qualifications of the people who will administer them. GDC's current execution protocol also fails to accommodate the unsuitability of my veins for lethal injection. As well as my other specific medical conditions, which on their own and together, create a substantial and unacceptable risk that my execution will violate my Eighth and Fourteenth Amendment rights. Finally GDC's use of unqualified personnel and inadequate and/or defective equipment will also violate my Eighth and Fourteenth Amendment rights.

*See* Attachment B.

On January 13, 2020, Nance's grievance was denied. It was determined that:

> The Georgia Department of Corrections carries out all court ordered execution procedures in a manner which is entirely consistent with the provisions of the United States Constitution and the laws of the State of Georgia. This grievance is denied.

*See* Attachment C. Nance was served with a copy of that denial on January 27, 2020. *Id.*

Nance has not yet appealed the decision to the central office. More importantly, Nance's grievance failed to include the same condition of confinement challenges that he now raises in this § 1983 complaint. In his grievance, he did not raise any claim concerning the interaction between gabapentin and pentobarbital, and he failed to allege any alternative method of execution, such as execution by firing squad. Therefore, these administrative remedies offered by GDC remain unexhausted.

In his complaint, Nance alleges that his grievance in pending, which is no longer the case. (Doc. 1, p. 22); Attachment C. Also, Nance alleges that his complaints are "non-grievable" under GDC's published grievance policy, but he offers no specifics to explain how he reached that conclusion. *Id.* Nance's claims directly challenge prison conditions and his argument regarding redressability is inconsequential. *See McNabb v. Comm'r Ala. Dep't of Corr.*, 727 F.3d 1334, 1344 (11th Cir. 2013) ("Usually, an inmate who challenges a

state's method of execution is attacking the means by which the State intends to execute him, which is a circumstance of his confinement").

Nance's "as-applied" claims, as stated in his complaint, regarding his challenges to the manner in which he will be executed fall squarely within the grievable issues of GDC's grievance procedure. These issues include "any condition, policy, procedure, action or lack thereof that personally affects the the Offender." Attachment A, p.4. The administration of pentobarbital in executions is an action that affects Nance personally. Nance's claims are not within the list of non-grievable issues included in GDC's standard operating procedures.  *Id.* at 4-5. "Thus, regardless of Defendants' said reasons for rejecting" Nance's filed grievance as well as the grievances of any previous inmates, Nance's claims are covered by the standard operating procedures, and, consequently, "the exhaustion requirement [cannot be] excused." *See Blankenship v. Owens*, No. 1:11-cv-429-TCB, 2011 U.S. Dist. LEXIS 14952 at *13-14 (N.D. Ga. Feb. 15, 2011).

Moreover, the PLRA mandates that an inmate exhaust all administrative remedies prior to filing any action asserting a violation under the Eighth Amendment. § 1997e(a); *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004). In fact, § 1997e(a) clearly states that "[n]o action shall be brought with respect to prison conditions . . . until such administrative

remedies as are available are exhausted." *Id.*; *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (holding that exhaustion is mandatory for any suit challenging prison conditions, even where the relief sought cannot be granted by the administrative process); *Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th Cir. 2008) (holding that the PLRA exhaustion requirement is mandatory, even if futile, and that courts cannot waive the exhaustion requirement). Accordingly, binding precedent shows that exhaustion is necessary. Nance failed to exhaust his remedies offered by GDC and this Court should dismiss Nance's complaint.

Respectfully submitted,

CHRISTOPHER M. CARR                    112505
Attorney General

BETH A. BURTON                         027500
Deputy Attorney General

SABRINA D. GRAHAM                      305755
Senior Assistant Attorney General

s/Clint C. Malcolm
CLINT C. MALCOLM                       745116
Assistant Attorney General

Please serve:

CLINT C. MALCOLM
Assistant Attorney General
Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
(404) 463-8784
cmalcolm@law.ga.gov

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have this day electronically filed this pleading with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

> Alixandria Lynn Davis
> John P. Hutchins
> Baker & Hostetler, LLP
> Suite 2400
> 1170 Peachtree St. N.E.
> Atlanta, GA 30309
>
> Vanessa Carroll
> Cory Isaacson
> Anna Arceneaux
> Georgia Resource Center
> 303 Elizabeth Street, N.E.
> Atlanta, GA 30307

This 30th day of January, 2020.

> s/Clint C. Malcolm
> Clint C. Malcolm
> Assistant Attorney General