IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MICHAEL WADE NANCE, | * | CIVIL ACTION NO. |
| | * | 1:20-CV-00107-JPB |
| PLAINTIFF, | * | |
| v. | * | |
| | * | |
| TIMOTHY C. WARD, | * | |
| Commissioner, | * | |
| Georgia Dep't of Corrections, and | * | |
| | * | |
| | * | |
| BENJAMIN FORD, Warden, | * | |
|    Georgia Diagnostic and | * | |
|    Classification Prison, | * | |
| | * | |
| DEFENDANTS. | * | |

<u>DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS</u>

| | |
|---|---|
| CHRISTOPHER M. CARR | 112505 |
| Attorney General | |
| | |
| BETH A. BURTON | 027500 |
| Deputy Attorney General | |
| | |
| SABRINA GRAHAM | 305755 |
| Senior Assistant Attorney General | |
| | |
| CLINT C. MALCOLM | 745116 |
| Assistant Attorney General | |

Comes now, Defendants Benjamin Ford and Timothy C. Ward, by and through counsel, Christopher M. Carr, Attorney General for the State of Georgia, and file their Reply to Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's Complaint under 42 U.S.C. § 1983, showing the Court as follows:

## I.  ARGUMENT AND AUTHORITY

A.  Nance's Claims are Time-Barred

(1) Nance's "method-of-execution" claims are time-barred.

Nance admits in his response to Defendants' motion to dismiss that he is not asserting a facial challenge to Georgia's method of execution. Doc. 22 at 3-4. However, the language from his complaint is not so clear. In his complaint, Nance alleges that the following "are sure or very likely" to cause him "needless pain and suffering[:]"

> unknown and untested quality, potency, purity and stability of the compounded pentobarbital; the execution team's inadequate skill, experience, and training; and other problematic elements of the Protocol as applied to Nance (i.e., long tubing, remote injection, alternatives to intravenous access).

(Doc. 1, p. 19). Nance also alleges that the alternative to intravenous access is central venous cannulation and that members of the execution team lack the skills and experience to comply with this portion of Georgia's lethal injection protocol. *Id.* at 17-18. Nance also alleges that if the drug is administered

inconsistently or inadequately he may survive and have to go through the process again. *Id.* at 18. He also alleges that central venous cannulation would cause excruciating pain. *Id.* at 19.

Defendants still assert that any "method-of-execution" claim would be time-barred under the two-year statute of limitations, as such claims accrued on October 2, 2006, when Nance's death sentence became "final," and Nance would have had two years, or until October 2, 2008, to file such claims. *See Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 873 (11th Cir. 2017).

### (2) Nance's "as-applied" challenge concerning the drug, gabapentin, is also time-barred.

Nance alleges that he began taking gabapentin in April 2016, and that his use of that drug will adversely interact with the pentobarbital administered when he is executed. Doc. 1 at 14-15. Based on that allegation, the two-year statute of limitations accrued in April 2016 and expired in April 2018. Nance filed his complaint in January 2020, which was approximately 21 months too late. Doc. 1. This claim is time-barred and should be dismissed accordingly.

For such an "as-applied" challenge, the two-year statute of limitations does not begin to run until the facts which would support the cause of action are apparent or should be apparent to a person with a reasonably prudent

regard for his rights. *See McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) (citing *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987). Nance asserts that the statute of limitations did not accrue in April 2016, but instead accrued at some later unidentified date when Nance "became aware, or should have become aware, that his prolonged used and increasing dosages [of gabapentin], would affect the efficacy of pentobarbital and impact his execution[.]"[1] Doc. 22 at 6. Nance offers no case law to support his position.

The Eleventh Circuit has dealt with an identical "as-applied" challenge before. *Ledford v. Comm'r, Ga. Dep't of Corr.*, 856 F.3d 1312, 1316 (11th Cir. 2017). Ledford alleged in his § 1983 complaint that he had been taking gabapentin for approximately a decade and that its interaction with pentobarbital would cause him "serious pain" during his execution. *Id*. The Eleventh Circuit correctly decided that Ledford's "as-applied" challenge concerning gabapentin was time-barred. *Id.*

On another occasion, the Eleventh Circuit determined that the factual predicate to support an "as-applied" execution challenge arose on the date the underlying medical condition was known to the plaintiff. *Siebert v. Allen*, 506 F.3d 1047, 1049 (11th Cir. 2007). Siebert was diagnosed with pancreatic

---

[1] Nance offers no date for when he believes his statute of limitations actually accrued.

4

cancer and hepatitis C in late May 2007, which would have been when the statute of limitations accrued. *Id*.

The factual predicate which supports Nance's "as-applied" challenge concerning the interaction of gabapentin and pentobarbital should have been apparent to him in April 2016. *See McNair*, 515 F.3d 1168 at 1173. Nance was a death-sentenced inmate in 2016 and knew he was facing execution by lethal injection when he started taking gabapentin. Nance argues that the statute of limitations did not accrue until he became aware, or should have become aware, of the alleged impact gabapentin may have on the efficacy of pentobarbital. Doc. 22 at 5-6. But he fails to suggest why he was not aware, or why he should not have been aware, of the alleged impact between the two drugs when he allegedly started taking gabapentin in 2016. Under Nance's suggestion of when the statute of limitations accrued, he could simply sit back and wait, ostensibly for as long as he wanted, to ascertain the alleged impact of a perceived injury under § 1983. That is simply not the law. Nance's death sentence became final on October 2, 2006; thus, he has known for many years that he would be executed by lethal injection. Consequently, any alleged impact gabapentin, or any other medical condition, would have with pentobarbital, which will be administered at the time of his execution,

should have been apparent to him, as "a person with a reasonably prudent regard for his rights," in April 2016. *See Mullinax*, 817 F.2d at 716. Thus, the statute of limitations began to run in April 2016 when Nance alleges he started taking gabapentin, and his "as-applied" challenge concerning gabapentin is time-barred and should be dismissed.

### (3) Nance's "as-applied" challenge concerning his veins is also time-barred.

Nance argues that the statute of limitations for his "as-applied" challenge concerning his allegedly "compromised veins" began to run on or around May 2019, when he was allegedly informed by a medical technician at the prison that the execution team would have to administer the pentobarbital through central venous cannulation, as opposed to intravenously. Doc. 22 at 5-6. Nance argues that the statute of limitations accrued in May 2019, because that is when it first became apparent to him that his "compromised veins" would have an impact on his execution. *Id.* at 6. Again, Nance is mistaken.

The statute of limitations accrued when the factual predicate for his claim became apparent to him, or **should have been** apparent to him. *See McNair*, 515 F.3d 1168 at 1173 (emphasis added). Nance's "as-applied" challenge concerning his veins accrued when he became aware, or should

have become aware, that alleged problems existed with his veins. Nance's death sentence became final in 2006, and he has known for years that he would be executed by lethal injection. As Nance alleges his veins are severely compromised, difficult-to-locate, heavily scarred, tortuous, irregular, and thin, then he certainly knew, or should have known, of the conditions of his veins years ago. Doc. 1 at 10, 11, 16. The date Nance knew of, or should have known of, the allegedly compromised condition of his veins is the date the statute of limitations accrued, not some conveniently selected date when someone allegedly told him how the condition of his veins might impact his execution. Nance, if exercising a reasonably prudent regard for his rights, would have known he had "heavily scarred" and "tortuous" veins many years ago, while simultaneously understanding that, as a death-sentenced inmate since 2002, he would be executed by "lethal injection[,] which is "the continuous intravenous injection of a substance or substances sufficient to cause death[.]" *See* O.C.G.A. § 17-10-38(a). Thus, this "as-applied" challenge is also time-barred and should be dismissed.

### (4) Nance's firing squad claims are also time-barred.

Because the aforementioned "as-applied" challenges are time-barred, Nance's accompanying request that he be executed by a firing squad is also time-barred. *See Ledford*, 256 F.3d 1312, 1319 (Ledford asserted the firing

7

squad claims well beyond the two-year statute of limitations, so those claims were dismissed as untimely). Nance's request to be executed by firing squad was known to him, or should have been known to him, when the factual predicates for his "as-applied" challenges concerning his veins and his use of gabapentin should have been known to him. Nance implies that Utah's execution protocol has been in existence for years, as Utah has carried out three executions by firing squad since 1976, including the most recent in July 18, 2010. Doc. 1 at 19-20. The basis for a firing squad claim would have been available to Nance years ago when he would have known about his "heavily scarred" and "tortuous veins" and when he allegedly first started taking gabapentin in 2016. The consequence is that Nance knew, or should have known, of the factual predicate underlying his "as-applied" challenges more than two years prior to his filing of his § 1983 complaint. Thus, Nance's request to be executed by firing squad based on his two "as-applied" execution challenges should be dismissed as time-barred.

## B. Nance's Complaint Fails to State a Plausible Claim for Relief

Nance argues that the combination of all the issues raised in his complaint, e.g., his unique medical condition; the unknown and untested quality, potency, purity and stability of the compounded pentobarbital; the execution team's inadequate skill, experience, and training; and other

problematic elements of Georgia's execution protocol (long tubing, remote injection, alternatives to intravenous access)[2] are likely to cause him serious illness and needless suffering and give rise to sufficiently imminent dangers. Doc. 22 at 7. Nance also argues that, even if one of these allegations does not give rise to a plausible claim for relief,[3] the combination of all the issues entitles him to relief. *Id.* However, Nance's claims are wholly speculative and conclusory, fail to state any plausible claim for relief, and should be dismissed.

### (1) Standard of review for dismissal at the pleading stage

Where an Eighth Amendment challenge alleges the risk of future harm, the conditions presenting the risk must be sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers,

---

[2] Confusingly, Nance again seems to conflate "method-of-execution" challenges with his "as-applied" execution challenges. Nance concedes that he is not raising any "method-of-execution" challenges, but now seems to suggest that he has not abandoned such claims. Regardless, Defendants continue to assert that any of these "method-of-execution" challenges are clearly time-barred, as Nance has not shown any substantial changes in the past two years to Georgia's execution protocol, and should also be dismissed for failure to state a claim for relief. *See Ledford*, 856 F.3d at 1315; *Gissendaner v. Ga. Dep't of Corr.*, 779 F.3d 1275, 1280 (II) (A) (11th Cir. 2015).
[3] It is noteworthy that Nance seems to recognize the insufficiencies in his complaint concerning his inability to state a plausible claim for relief. Nance asks this Court to adopt some type of cumulative test to allow for a review of all his claims together to see if they sufficiently state a plausible claim for relief. Nance offers no authority to support such a position.

and the plaintiff must satisfy the readily available alternative requirement. *Arthur v. Comm'r, Ala. Dep't of Corr.*, 840 F.3d 1268, 1305-06 (XVI) (11th Cir. 2016); *Gissendaner*, 779 F.3d at 1283. Consequently, at the pleading stage, a complaint must plausibly allege sufficient factual information, to rise above the speculative level and give rise to more than a mere possibility that the plaintiff is entitled to relief. *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 864 (11th Cir. 2017); *Gissendaner*, 803 F.3d at 571.

Nance suggests that he alleges enough "facts" to survive a motion to dismiss. Doc. 22 at 9-10. For the reasons already stated in Defendants' motion to dismiss, Nance has not. The complaint "must include enough facts to raise a right to relief above the speculative level." *Boyd*, 856 F.3d at 864. Even if Nance had sufficiently made enough "well-pleaded factual allegations" in his complaint, which he has not, Nance still must show that his factual allegations "plausibly give rise to an entitlement to relief," which he has also failed to do. *Bell Atlantic Corp. V. Twombly*, 550 U.S. 544, 555 (2007).

### (2) "As-applied challenge concerning Nance's compromised veins fails to state a plausible claim for relief.

Nance has failed to allege sufficient, plausible factual allegations to "establish a high level of likelihood that [he] will suffer serious illness or

needless suffering during [his] execution." *Id*. Simply alleging that the condition of one's veins may impair intravenous access and require the execution team to administer the pentobarbital by central venous cannulation, a contingency which is accounted for in Georgia's lethal injection protocol, does not plausibly state a claim for relief. Nance's complaint must "plausibly give rise to an entitlement of relief," i.e., his claim must plausibly allege that his "compromised" veins pose a risk that is "sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers" if he is executed by lethal injection. *See Twombly*, 550 U.S. at 555; *Gissendaner*, 779 F.3d at 1283. Nance has not met that pleading standard, as the Eleventh Circuit has determined that similarly pled "as-applied" challenges to intravenous access at execution based on one's alleged medical condition fail to plausibly state a claim for relief. *See Gissendaner*, 779 F.3d at 1279, 1283.

### (3) "As-applied challenge concerning Nance's use of gabapentin fails to state a plausible claim for relief.

Consequently, Nance's "as-applied" challenge concerning gabapentin also fails to plausibly state a claim for relief. The plausibility standard requires more than simply alleging something that is conceivable in theory. *Iqbal*, 556 U.S. at 680. Even assuming Nance pled enough facts supporting his

gabapentin claim, which he has not, he still has not plausibly alleged that Georgia's lethal injection protocol, as applied to him based on his use of gabapentin, creates a substantial risk of harm. *See Ledford*, 856 F.3d at 1317 (Ledford, who claimed he had been taking gabapentin for a decade, was executed without complication). Nance has not plausibly alleged that the interaction between gabapentin and pentobarbital would be "sure or very likely to cause serious illness and needless suffering." *See Gissendaner*, 779 F.3d at 1283.

### (4) Nance has also failed to plausibly allege an execution alternative.

Finally, Nance's complaint should be dismissed because he has not sufficiently pled a plausible claim of an alternative that is "feasible, readily implemented, and that will in fact significantly reduce the substantial risk of severe pain." *Gissendaner*, 779 F.3d at 1283. Not only has Nance offered conclusory speculation to support his firing squad alternative, he has failed to plead sufficient facts to render it plausible that a firing squad would "significantly reduce a substantial risk of severe pain." *Glossip*, 135 S. Ct. 2726, 2737 (2015).

Nance argues that Defendants' reliance on *Ledford* is misplaced because that case involved a motion for stay of execution. Doc. 22 at 13. While Ledford did file his § 1983 complaint five days before his scheduled execution,

12

the Eleventh Circuit not only determined that Ledford failed to show he should be granted a stay of execution, but that court also determined that Ledford failed to allege sufficient facts to render it plausible that a firing squad is a feasible and readily implemented method of execution in Georgia that would significantly reduce a substantial risk of severe pain. *Ledford*, 856 F.3d at 1318 (V).

In his complaint, Nance makes the conclusory statement that a firing squad would significantly eliminate or reduce the substantial risk of severe pain. Doc. 1 at 20-21. However, "a formulaic recitation of the elements of a cause of action" will not suffice to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. Nance also alleges that "execution by firing squad is both swift and virtually painless" and that "if performed properly, the use of a firing squad will eliminate the substantial risk of severe pain that Defendants' current execution protocol presents to Nance." Doc. 1 at 21. Again, such allegations are the epitome of conclusory speculation.

Nance must allege "enough facts to raise a right to relief above the speculative level," which requires stating a plausible claim, "with more than labels and conclusions," that execution by firing squad will significantly reduce the substantial risk of severe pain based on his allegedly compromised veins and his use of gabapentin. *See Twombly*, 550 U.S. at 555; *Boyd*, 856

13

F.3d at 864. Nance suggests that Georgia could easily implement Utah's firing squad execution protocol and, ostensibly, if that protocol were implemented, Nance asserts the risk of severe pain at execution would be eliminated. Doc. 1 at 20-21. However, Nance simply asserts the baseless legal conclusion that "firing squad is a known and available alternative method of execution that presents a substantially lower risk of pain and suffering to [him] than Defendants' Protocols for lethal injection." *Id.* at 21. Nance is required to plausibly allege how execution by firing squad would "significantly reduce the substantial risk of severe pain" as compared with execution by lethal injection. *See Gissendaner*, 779 F.3d at 1283. Simply speculating that death by firing squad is "swift and virtually painless" is insufficient to plausibly plead an alternative execution claim that would significantly reduce the substantial risk of severe pain. Doc. 1 at 21.

 Nance must plead his claim with enough plausibility "to raise a reasonable expectation that discovery will reveal evidence" that execution by firing squad is "feasible and readily implemented" in Georgia and that, based on his alleged medical situation, will significantly reduce the substantial risk of severe pain. *See Glossip*, 135 S.Ct. at 2737; *Twombly*, 550 U.S. at 555. Nance has not alleged enough facts concerning the firing squad alternative to "nudge his claim[s]…across the line from conceivable to plausible." *Mann v.*

*Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Twombly*, 550 U.S. at 570). This Court does not have to accept as true Nance's allegation that "[e]vidence and recent experience strongly suggest that the firing squad is significantly more reliable than lethal injection." Doc. 1 at 21 para.105. That claim is the epitome of a "conclusory allegation," and Nance fails to allege enough accompanying facts "to make that statement plausible." *Mann*, 713 F.3d at 1315 (citing *Twombly*, 550 U.S. at 570). Nance needed to allege more facts to show that if he is executed by firing squad, it is plausible, not merely conceivable, that such an alternative execution method would significantly reduce the risk of severe pain. *See Glossip*, 135 S.Ct. at 2737; *Twombly*, 550 U.S. at 570.

Nance also argues that the Supreme Court decision in *Bucklew v. Precythe*, 139 S.Ct. 1112, 1125 (2019), undermines Defendants' argument that the firing squad alternative fails to state a plausible claim for relief. Doc. 22 at 18-20. Although *Bucklew* says an inmate seeking to identify an alternative method of execution is not limited to choosing an alternative authorized by his particular State's law, Nance still has failed to sufficiently plead a plausible claim for relief. *Bucklew*, 139 S.Ct. at 1128. Nance has alleged insufficient facts to "nudge his [firing squad] claim[s]…across the line from conceivable to plausible," as he has not plausibly pled a claim that

15

execution by firing squad is feasible and readily implemented in Georgia. *Mann*, 713 F.3d at 1315 (citing *Twombly*, 550 U.S. at 570). To state a plausible claim for relief, Nance must allege sufficient facts to show that Georgia could carry out an execution by firing squad "relatively easily and reasonably quickly." *See Bucklew*, 139 S.Ct. at 1129. Nance alleges that execution by firing squad is "readily implemented" because Utah has a firing squad protocol and because Georgia allegedly has "a sufficient stockpile or can readily obtain both the weapons and ammunition necessary to carry out an execution." Doc. 1 at 20-21. However, Nance offers insufficient factual pleadings to make it plausible that Georgia could readily implement a firing squad protocol "relatively easily and reasonably quickly."

 Nance provides no direct citation to any specific facts from Utah's firing squad protocol. Instead, he simply references the existence of that protocol and assumes Georgia would be able to adopt a similar protocol. Nance pleads that Utah's execution protocol is described in great detail in the Technical Manual of the Utah Department of Corrections and provides a citation to a newspaper article about Utah's use of the firing squad. Doc. 1 at 20-21. But, Nance provides no factual detail concerning the provisions of Utah's firing squad protocol, much less any facts surrounding the manner in which Georgia could implement this protocol "relatively easily and reasonably

16

quickly." Nance does not cite to any portion of Utah's protocol, and he does not plead how Georgia would implement any portion of Utah's protocol. Simply pointing to another state's firing squad protocol and assuming that all that is needed to implement such a protocol in Georgia is "a sufficient stockpile…[of] weapons and ammunition" does not make it plausible that execution by firing squad is a feasible alternative to lethal injection in Georgia that could be implemented "relatively easily and reasonably quickly." Nance has not established more than a mere possibility that Georgia could readily implement Utah's firing squad protocol. Without any alleged facts surrounding Utah's protocol, we are left to assume that Nance believes all that is necessary to adopt a similar execution protocol in Georgia would be the existence of firearms and ammunition. Clearly, more facts must be alleged to plausibly establish firing squad as a feasible alternative to lethal injection.

Accordingly, Nance's entire complaint should be dismissed because he fails to state a plausible claim for relief.

### C. Nance's claims should also be dismissed because he failed to exhaust his remedies.

Nance has not exhausted his remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. Although Nance filed a grievance, which has been denied by GDC, he has failed to appeal GDC's denial.[4] Additionally, Nance failed to raise the same condition of confinement challenges in his grievance that he now raises in this § 1983 complaint. He did not raise any claim concerning the interaction between gabapentin and pentobarbital, and he failed to allege any alternative method of execution, such as execution by firing squad. Therefore, these administrative remedies offered by GDC remain unexhausted, and Nance's complaint should be dismissed accordingly.

---

[4] Nance argues that he filed an appeal on January 30, 2020, but GDC shows no record of such an appeal. Doc. 22 at 20. Nance has not attached a copy of any appeal he has filed.

Respectfully submitted,

| | |
|---|---|
| CHRISTOPHER M. CARR<br>Attorney General | 112505 |
| BETH A. BURTON<br>Deputy Attorney General | 027500 |
| SABRINA D. GRAHAM<br>Senior Assistant Attorney General | 305755 |
| s/Clint C. Malcolm<br>CLINT C. MALCOLM<br>Assistant Attorney General | 745116 |

Please serve:

CLINT C. MALCOLM
Assistant Attorney General
Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
(404) 463-8784
cmalcolm@law.ga.gov

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day electronically filed this pleading with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

    Alixandria Lynn Davis
    John P. Hutchins
    Baker & Hostetler, LLP
    Suite 2400
    1170 Peachtree St. N.E.
    Atlanta, GA 30309

    Vanessa Carroll
    Cory Isaacson
    Anna Arceneaux
    Georgia Resource Center
    303 Elizabeth Street, N.E.
    Atlanta, GA 30307

This 26th day of February, 2020.

                              s/Clint C. Malcolm
                              Clint C. Malcolm
                              Assistant Attorney General