[PUBLISH]

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 20-11393

_____

MICHAEL WADE NANCE,

                                              Plaintiff-Appellant,

*versus*

COMMISSIONER, GEORGIA DEPARTMENT OF CORRECTIONS,
WARDEN, GEORGIA DIAGNOSTIC AND CLASSIFICATION PRISON,

                                              Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-00107-JPB

Case 1:20-cv-00107-JPB   Document 45   Filed 01/30/23   Page 2 of 17
USCA11 Case: 20-11393   Document: 56-1   Date Filed: 01/30/2023   Page: 2 of 16

2                          Opinion of the Court                     20-11393

_____

## ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before WILLIAM PRYOR, Chief Judge, and NEWSOM and LAGOA, Circuit Judges.

WILLIAM PRYOR, CHIEF JUDGE:

This appeal, on remand from the Supreme Court, arises from a Georgia prisoner's objection based on his medical conditions to his prescribed method of execution. The district court dismissed the action as untimely and for failure to state a claim. We hold that the action is timely because the prisoner raised an as-applied challenge, so the limitations period commenced only when the claim became or should have become apparent to a person with a reasonably prudent regard for his rights. And we hold that the prisoner stated a plausible Eighth Amendment claim when he alleged that the medication gabapentin had reduced his brain's receptiveness to sedatives. But we hold that the prisoner failed to state a claim when he alleged that the lethal drugs cannot be injected into his veins according to standard protocols because he failed to plausibly allege that one alternative injection procedure could not constitutionally be performed. So, we reverse in part, affirm in part, and remand for further proceedings.

# I. BACKGROUND

Michael Wade Nance is a prisoner sentenced to death after he was convicted of malice murder, among other crimes. The State of Georgia intends to execute him by injection of the drug pentobarbital, which has a sedative and, ultimately, lethal effect. Nance filed this action to enjoin execution by that method. *See* 42 U.S.C. § 1983.

Nance alleged that due to his two medical conditions, execution by lethal injection would violate his constitutional right to be free from cruel and unusual punishment. *See* U.S. CONST. amends. VIII, XIV. First, he alleged that his veins are "severely compromised," so inserting an intravenous catheter might cause a vein to "blow" and leak the drug into the surrounding tissue, which would allegedly cause pain and prevent the administration of a full dose of the drug pentobarbital. He alleged that alternative injection procedures are complicated and painful. Second, Nance alleged that gabapentin, a medication he takes to treat back pain, has made his brain less responsive to other drugs, such as pentobarbital. Both conditions, he alleged, would prevent him from being fully sedated during the execution. As an alternative method of execution that would reduce his risk of severe pain, Nance proposed death by firing squad.

The Commissioner of the Georgia Department of Corrections moved to dismiss Nance's complaint, and the district court granted the motion. Although Nance alleged one "claim for relief" in his complaint, the district court construed his arguments about

Case 1:20-cv-00107-JPB   Document 45   Filed 01/30/23   Page 4 of 17
USCA11 Case: 20-11393   Document: 56-1   Date Filed: 01/30/2023   Page: 4 of 16

4                    Opinion of the Court                  20-11393

his compromised veins and his gabapentin usage as separate claims. The district court determined that Nance filed the action after the limitations period had expired. And it determined that Nance failed to state a claim for relief.

On appeal, we construed this action as a habeas petition and held that it should be dismissed for lack of jurisdiction as second or successive. *Nance v. Comm'r, Ga. Dep't of Corr.*, 981 F.3d 1201, 1211, 1214 (11th Cir. 2020). The Supreme Court reversed and held that section 1983 was a proper vehicle for a method-of-execution challenge that proposed an alternative method of execution not permitted by state law. *Nance v. Ward*, 142 S. Ct. 2214, 2219 (2022). It remanded to this Court to "address the timeliness question, as well as any others that remain." *Id.* at 2226.

## II. STANDARD OF REVIEW

We review *de novo* both the application of a statute of limitations, *NE 32nd St., LLC v. United States*, 896 F.3d 1240, 1243 (11th Cir. 2018), and the dismissal of a complaint for failure to state a claim for relief, *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009).

## III. DISCUSSION

We divide our discussion into two parts. First, we explain that Nance's complaint is timely. Second, we explain that Nance has properly stated a claim with respect to one of his medical conditions but not the other.

Case 1:20-cv-00107-JPB   Document 45   Filed 01/30/23   Page 5 of 17
USCA11 Case: 20-11393   Document: 56-1   Date Filed: 01/30/2023   Page: 5 of 16

20-11393               Opinion of the Court                5

### A. Nance's Complaint is Timely.

The district court determined that Nance's complaint was untimely because the limitations period for his claim had expired. A claim brought under section 1983 is subject to the state statute of limitations governing personal injury actions, *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 872 (11th Cir. 2017), which is two years in Georgia, GA. CODE § 9-3-33. But federal law determines the date on which a cause of action accrues. "In Section 1983 cases, the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987) (alteration adopted) (citation and internal quotation marks omitted). So, in an ordinary, facial challenge, "a method of execution claim accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol." *McNair v. Allen*, 515 F.3d 1168, 1174 (11th Cir. 2008). More than two years had passed since Nance's death sentence became final and since the last change to Georgia's execution protocol.

Nance argues that the date on which the cause of action accrued should be determined differently when a prisoner brings an as-applied challenge. He contends that "an as-applied challenge to a State's method of execution accrues when the plaintiff discovers or should reasonably discover the unique factual circumstances that render *his* execution unconstitutional." (Emphasis added.) So,

Case 1:20-cv-00107-JPB   Document 45   Filed 01/30/23   Page 6 of 17
USCA11 Case: 20-11393   Document: 56-1   Date Filed: 01/30/2023   Page: 6 of 16

6                        Opinion of the Court                    20-11393

Nance asserts that the limitations period did not start running until he had "become aware that his veins would inhibit IV access and cause a vein to 'blow'" and until he had "become reasonably aware that his increased and prolonged dosage of gabapentin would interfere with the sedative effect of pentobarbital."

The district court rejected the argument that the accrual of the cause of action should be "based on when [a plaintiff] happens to discover information purportedly sufficient to inform him that he has a viable claim." It expressed concern that a plaintiff "could simply sit back and wait, ostensibly for as long as he wanted, to ascertain the alleged impact of a perceived injury under [section] 1983, which would defeat the purpose of the statute of limitations." (Internal citation and quotation marks omitted.) The district court was mistaken.

If the basis for his claim became reasonably apparent later, a plaintiff may pursue an as-applied method-of-execution claim even though two years have passed since his sentence became final or since the execution protocol changed. The limitations period in an as-applied challenge "does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *McNair*, 515 F.3d at 1173 (quoting *Mullinax*, 817 F.2d at 716). So, as Nance correctly argues, "an as-applied challenge can only accrue once the plaintiff becomes aware (or should have become aware)

Case 1:20-cv-00107-JPB   Document 45   Filed 01/30/23   Page 7 of 17
USCA11 Case: 20-11393   Document: 56-1   Date Filed: 01/30/2023   Page: 7 of 16

20-11393                Opinion of the Court                         7

that his unique personal circumstances would render his execution unconstitutional."

We have previously implied that the statute of limitations should be calculated in this way when a prisoner raises an as-applied challenge to his method of execution, see *Siebert v. Allen*, 506 F.3d 1047, 1049–50 (11th Cir. 2007), and we now reach that holding expressly. To the extent that Nance also raised facial challenges, those challenges are untimely, but his as-applied challenges survive.

The limitations period began to run for Nance's as-applied challenge as soon as he learned of the conditions that led him to object to Georgia's prescribed method of execution. Nance incorrectly argues that the limitations period only began to run when he learned *how* his vein condition and medication would impact his execution. But a person with a reasonably prudent regard for his rights would inform himself of any impact his medical conditions might have on his execution when he learned of those conditions. *Cf. McCullough v. United States*, 607 F.3d 1355, 1359–60 (11th Cir. 2010) (explaining that the statute of limitations begins to run when the plaintiff "learn[s] the 'critical facts' indicating that he had been hurt and who had inflicted the injury" (citation omitted)); *see also Ledford v. Comm'r, Ga. Dep't of Corr.*, 856 F.3d 1312, 1316 (11th Cir. 2017) (indicating that a similar method-of-execution claim was untimely because the plaintiff had "been *taking* gabapentin for approximately a decade" (emphasis added)); *Siebert*, 506 F.3d at 1049

(explaining that an "'as-applied' [method-of-execution] claim was timely" because it was "filed immediately upon diagnosis" of the prisoner's medical conditions "and thus as soon as he could have brought it").

Nance could not, as the district court suggested, "sit back and wait . . . to ascertain the alleged impact of a perceived injury." Instead, he would be on notice as soon as he received a diagnosis or relevant change in treatment. When Nance learned or should have learned of these two medical conditions—his vein condition and his increased dosage of gabapentin—is a factual question inappropriate for resolution at the motion-to-dismiss stage. *See Santiago v. Lykes Bros. S.S. Co.*, 986 F.2d 423, 425 (11th Cir. 1993). Although Nance conceded that he had been taking gabapentin for more than two years, he alleged that his dosage had been increased within the two-year timeframe. Whether Nance faced a risk of not responding to sedative drugs only because of the dosage increase is also a question of fact.

Finally, the district court erroneously suggested that Nance had to affirmatively plead the date on which he discovered his medical conditions. It stated that because Nance "ma[de] no claim about when he learned of the potential adverse interaction between" gabapentin and pentobarbital, his "gabapentin claim is clearly time-barred." "Likewise," the district court continued, Nance "ha[d] made no claim that his veins became compromised within the past two years." But because the statute of limitations is an affirmative defense, Nance did not need to plead the date he

Case 1:20-cv-00107-JPB Document 45 Filed 01/30/23 Page 9 of 17
USCA11 Case: 20-11393 Document: 56-1 Date Filed: 01/30/2023 Page: 9 of 16

20-11393        Opinion of the Court        9

became aware of his vein condition or the date he began taking an increased dose of gabapentin. *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). It is not "apparent from the face of the complaint" that Nance's claim is untimely. *Id.* (citation omitted).

### B. One of Nance's Claims for Relief Satisfied the Pleading Standard, but the Other Did Not.

The district court alternatively dismissed Nance's complaint for failure to state a claim for relief. Both the district court and Nance's briefs on appeal have construed his complaint to plead two separate claims for relief based on his two medical conditions, and so do we.

To "challenge . . . a lethal injection protocol" under the Eighth Amendment, a prisoner must show that "(1) the lethal injection protocol in question creates a substantial risk of serious harm, and (2) there are known and available alternatives that are feasible, readily implemented, and that will in fact significantly reduce the substantial risk of severe pain." *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1283 (11th Cir. 2015) (alteration adopted) (citation and internal quotation marks omitted). The Supreme Court has explained that "[i]f a State refuses to adopt such an alternative in the face of these documented advantages, without a legitimate penological justification for adhering to its current method of execution, then a State's refusal to change its method

Case 1:20-cv-00107-JPB   Document 45   Filed 01/30/23   Page 10 of 17
USCA11 Case: 20-11393   Document: 56-1   Date Filed: 01/30/2023   Page: 10 of 16

10                    Opinion of the Court                    20-11393

can be viewed as 'cruel and unusual' under the Eighth Amendment." *Baze v. Rees*, 553 U.S. 35, 52 (2008) (plurality opinion).

The Commissioner argues that Nance failed both to allege that Georgia's prescribed execution protocol creates a substantial risk of serious harm and to propose a suitable alternative method of execution. The latter argument is common to both claims. The Commissioner contends that the claims fall short of the pleading standard because Nance has failed to allege that his proposed alternative method of execution, death by firing squad, constitutes a readily available alternative that would significantly reduce a substantial risk of severe pain and because the State has a legitimate penological reason to reject that alternative. We conclude that Nance has alleged a plausible alternative method of execution and that Nance's gabapentin claim meets the pleading standard but his claim based on his vein condition does not.

1. Nance has Alleged a Plausible Alternative Method of Execution.

Nance has plausibly alleged that execution by firing squad would be a viable and less painful alternative method of execution, as applied to him. *See Gissendaner*, 779 F.3d at 1283. Nance proposed execution by firing squad as an alternative that would reduce his risk of severe pain and had been implemented in another jurisdiction. His proposal, which cites the protocol described in Utah's detailed technical manual, is "sufficiently detailed to permit a finding that the State could carry it out relatively easily and reasonably

Case 1:20-cv-00107-JPB   Document 45   Filed 01/30/23   Page 11 of 17
USCA11 Case: 20-11393   Document: 56-1   Date Filed: 01/30/2023   Page: 11 of 16

20-11393               Opinion of the Court                11

quickly." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1129 (2019) (citation and internal quotation marks omitted). And he has pleaded that "execution by firing squad is both swift and virtually painless" such that it would "eliminate the substantial risk of severe pain that [the Commissioner's] current execution Protocol presents to Mr. Nance."

That lethal injection is the sole method of execution permitted under Georgia law, GA. CODE § 17-10-38(a), does not prevent Nance from proposing a different alternative. The Supreme Court has stated that "[a]n inmate seeking to identify an alternative method of execution is not limited to choosing among those presently authorized by a particular State's law." *Bucklew*, 139 S. Ct. at 1128. If no method of execution would satisfy both the Federal Constitution and Georgia law, Nance cannot be executed. *See Nance*, 142 S. Ct. at 2223 ("Assuming it wants to carry out the death sentence, the State can enact legislation approving what a court has found to be a fairly easy-to-employ method of execution.").

The Commissioner argues that the State has a legitimate interest in refusing to execute Nance by firing squad, a practice that it characterizes as "relatively uncommon and archaic." A state may refuse to adopt a prisoner's proposed alternative method of execution for a legitimate penological reason. *Bucklew*, 139 S. Ct. at 1125, 1129–30. But the district court did not pass on the question whether Georgia had a legitimate penological justification for its refusal. So, we leave that question to the district court on remand.

Case 1:20-cv-00107-JPB   Document 45   Filed 01/30/23   Page 12 of 17
USCA11 Case: 20-11393   Document: 56-1   Date Filed: 01/30/2023   Page: 12 of 16

12                        Opinion of the Court                        20-11393

### 2. Nance has Sufficiently Pleaded that He Faces a Substantial Risk of Serious Harm Based on One of His Medical Conditions but Not the Other.

The Commissioner also argues that Nance has not sufficiently pleaded that Georgia's execution protocol "creates a substantial risk of serious harm" to him. *Gissendaner*, 779 F.3d at 1283 (citation and internal quotation marks omitted). Nance's gabapentin claim meets the pleading standard, but his claim based on his vein condition does not.

Nance's gabapentin claim states a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nance unambiguously alleged that his current dosage of gabapentin has made his brain less receptive to pentobarbital, the drug Georgia uses in lethal injections. Specifically, he alleged that "[p]rolonged gabapentin use alters a person's brain chemistry and makes the person's brain less responsive, or even unresponsive, to other drugs, including pentobarbital." The district court did not explain why Nance failed to state a claim with respect to his gabapentin allegations, and it is not clear whether it even reached the issue after ruling that the claim was untimely. In any event, we hold that Nance has stated a claim for relief.

Nance also alleged that the lethal drugs could not be administered through a standard intravenous catheter due to his weak veins. He alleged that the State's technicians would "cause [him] excruciating pain . . . by repeatedly attempting to insert needles

into unidentifiable and/or inaccessible veins." Nance also alleged that alternative methods of injecting the drugs—central venous cannulation and a cutdown procedure—were not constitutionally permissible. Central venous cannulation would involve "inserting a catheter into a central vein located either in the groin, or above or below the clavicle." And a cutdown procedure would involve "making a deep incision into the subject's skin to find a blood vessel, which is then cut open to allow for the insertion of a catheter." Nance alleged that these alternative procedures do not pass constitutional muster because they are painful and difficult to perform.

The district court rejected all these arguments. It determined that the State's technicians would presumptively carry out the execution humanely and that Nance "ha[d] no basis to allege that state officials will, effectively, torture him by repeatedly sticking him with a needle in a fruitless effort to locate a suitable vein." It determined that "to the degree that [Nance] contends that his veins might 'blow' when injected with pentobarbital, [he] fails to state a viable claim because Georgia's protocol mandates that a physician perform a medically-approved alternative" in such circumstances. It ruled that "central venous cannulation is a routine procedure." It also ruled that the theory that technicians would resort to a cutdown procedure was speculative, but it found that, in any event, they would carry out that procedure humanely too.

Nance plausibly alleged that the lethal drug could not be successfully administered through a standard intravenous catheter due

Case 1:20-cv-00107-JPB   Document 45   Filed 01/30/23   Page 14 of 17
USCA11 Case: 20-11393   Document: 56-1   Date Filed: 01/30/2023   Page: 14 of 16

14           Opinion of the Court           20-11393

to his weak veins. By alleging that the pentobarbital would leak—causing severe pain and the possibility of incomplete sedation during execution—Nance plausibly alleged the State's prescribed method of execution would subject him to a substantial risk of harm. The remaining question is whether Nance has also plausibly alleged that the existing alternatives to the standard injection protocol, cannulation and a cutdown procedure, are also constitutionally impermissible, as applied to him.

Nance's allegation that a cutdown procedure would constitute an impermissible alternative was not speculative. Although Georgia's lethal injection protocol mentions only cannulation by name as an alternative to the standard injection procedure, it also allows "other medically approved alternative[s]" to be used. Nance's allegation was not speculative because it was based on the statement of a prison medical technician that "the execution team would have to cut [Nance's] neck to carry out the execution." And even if the allegation were speculative, that determination would eliminate the alternative cutdown procedure from consideration; it would not alter the conclusion that Nance had properly pleaded a substantial risk of harm from the standard injection protocol.

Nance's allegation that a cutdown procedure would constitute an impermissible alternative was also not conclusory. Nance alleged that the cutdown procedure would be excessively painful and asserted that it is usually performed on a person "under deep sedation." Nance could not be sedated during the procedure

Case 1:20-cv-00107-JPB   Document 45   Filed 01/30/23   Page 15 of 17
USCA11 Case: 20-11393   Document: 56-1   Date Filed: 01/30/2023   Page: 15 of 16

20-11393            Opinion of the Court              15

because technicians allegedly would be unable to access his veins to administer a sedative under the normal protocol. Nance's assertion went beyond "a formulaic recitation of the elements of a cause of action," and his allegations have a sufficient basis in fact "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Nevertheless, the district court correctly concluded that Nance's allegation that cannulation is an unacceptable alternative procedure was deficient. Although Nance asserted that cannulation is a painful and complicated procedure, he did not assert any facts supporting that allegation. Nance's allegations based on his vein condition fail to state a claim for relief because he has not plausibly alleged that both of the identified alternative lethal injection procedures would be constitutionally impermissible. Even so, Nance is still at liberty to amend his complaint because no responsive motions have yet been filed. *See Fortner v. Thomas*, 983 F.2d 1024, 1032 (11th Cir. 1993) (explaining that a motion to dismiss is not a responsive pleading).

Additionally, the district court correctly rejected Nance's argument that state technicians would subject him to an unconstitutional level of pain by repeatedly pricking him with a needle. Nance did not plausibly allege that a futile attempt to locate a vein would give rise to a constitutionally intolerable level of pain. After all, "the Eighth Amendment does not guarantee a prisoner a painless death," but rather it forbids the use of "long disused (unusual)

Case 1:20-cv-00107-JPB   Document 45   Filed 01/30/23   Page 16 of 17
USCA11 Case: 20-11393   Document: 56-1   Date Filed: 01/30/2023   Page: 16 of 16

16                 Opinion of the Court                 20-11393

forms of punishment that intensified the sentence of death with a (cruel) superaddition of terror, pain, or disgrace." *Bucklew*, 139 S. Ct. at 1124 (alteration adopted) (citation and internal quotation marks omitted).

## IV. CONCLUSION

Because Nance's challenge is timely and because he states a plausible claim for relief, we **REVERSE** in part and **AFFIRM** in part the judgment dismissing the complaint and **REMAND** for further proceedings consistent with this opinion.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

January 30, 2023

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 20-11393-P
Case Style: Michael Nance v. Commissioner, Georgia DOC, et al
District Court Docket No: 1:20-cv-00107-JPB

Enclosed is a copy of this court's decision filed today in this appeal on remand from the Supreme Court of the United States.

<u>Clerk's Office Phone Numbers</u>

| | |
|---|---|
| General Information | 404-335-6100 |
| New / Before Briefing Cases | 404-335-6135 |
| Cases in Briefing / After Opinion | 404-335-6130 |
| Cases Set for Oral Argument | 404-335-6141 |
| Capital Cases | 404-335-6200 |
| Attorney Admissions | 404-335-6122 |
| CM/ECF Help Desk | 404-335-6125 |

OPIN-6 Issuance of Opinion Remand SC