## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| MICHAEL WADE NANCE,<br><br>    *Plaintiff*,<br><br>vs.<br><br>TYRONE OLIVER, Commissioner,<br>Georgia Department of Corrections,<br><br>SHAWN EMMONS, Warden, Georgia<br>Diagnostic and Classification Prison,<br><br>    *Defendants*. | CIVIL ACTION NO.:<br>1:20-cv-00107-JPB |

## <u>PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT</u>

Plaintiff Michael Nance, by and through counsel, moves to alter or amend the judgment issued against him by this Court on February 14, 2025. D. 158. He does so under Federal Rule of Civil Procedure 59(e), which allows a party to file a motion to alter or amend a judgment within 28 days after the entry of the judgment. Fed. R. Civ. P. 59(e).

## <u>ARGUMENT AND AUTHORITY</u>

A motion to alter or amend a judgment is appropriate where there are "manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir.

2007). "An error is 'manifest' if it is 'clear and obvious.'" *Nefsky v. Unum Life Ins. Co. of Am.*, No. 1:15-CV-2119-WSD, 2017 WL 3700305, at *4 (N.D. Ga. Aug. 28, 2017) (quoting *United States v. Battle*, 272 F. Supp. 2d 1354, 1358 (N.D. Ga. 2003)).

This Court committed "clear and obvious" error by misapplying the foundational law governing Eighth Amendment method of execution claims. In determining whether a method of execution violates the Eighth Amendment, the United States Supreme Court has instructed courts to engage in "a *necessarily* comparative exercise." *Bucklew v. Precythe*, 587 U.S. 119, 136 (2019). As the Supreme Court explained in *Bucklew*,

> when it comes to determining whether a punishment is unconstitutionally cruel because of the pain involved, the law has always asked whether the punishment "superadds" pain well beyond what's needed to effectuate a death sentence. And answering that question has always involved a comparison with available alternatives, not some abstract exercise in "categorical" classification.

*Bucklew*, 587 U.S. at 136–37. Thus, trial courts cannot evaluate an execution method's risk of pain in isolation but rather must ask whether "the risk of pain associated with the State's method is 'substantial w*hen compared to a known and available alternative*.'" *Id.* at 134 (citing *Glossip v. Gross*, 576 U.S. 863, 878 (2015)) (emphasis added).

And yet, looking at the method of execution in isolation is exactly what the Court did here, evaluating the State's lethal injection protocol without making any

comparison whatsoever to Mr. Nance's proposed alternative, firing squad. *See* Doc. 157 at 23. Indeed, this Court expressly concluded that it had "no need to address the argument that the firing squad is a feasible and readily available alternative that could significantly reduce [Mr. Nance's] pain" at all. Doc. 157 at 23. The Court thus failed to engage in the "necessarily comparative exercise" prescribed by the Supreme Court in *Bucklew*, wholly ignoring Mr. Nance's proposed alternative in finding that "Plaintiff has failed to show that his execution by lethal injection under Georgia's protocol is substantially likely to result in his suffering an unconstitutional level of pain or discomfort," Doc. 157 at 21. The isolated and incomplete inquiry in which this Court engaged is clearly erroneous under the governing law.

The United States Supreme Court in *Bucklew* demonstrated how the analysis is supposed to work, first "begin[ning] with the question of a proposed alternative." *Bucklew*, 587 U.S. at 141. As the initial step in the analysis, the Court looked at the proposed alternative in that case, nitrogen hypoxia, and asked whether it was "feasible" and could be "readily implemented"—two factors that must be proven under *Glossip*'s test. *Id.* (cleaned up). The *Bucklew* Court found that Mr. Bucklew gave a "bare-bones proposal" that left out essential information about how the nitrogen hypoxia would be administered and acknowledged "more research" was needed to develop a nitrogen hypoxia protocol. *Id.* at 141-42. Under those

circumstances, the Court determined Mr. Bucklew's proposal was not a "readily implemented alternative." *Id.* It also determined that the State had a legitimate reason not to pursue nitrogen hypoxia, finding that, "[r]ather than point to a proven alternative method, Mr. Bucklew sought the adoption of an entirely new method— one that had never been used to carry out an execution and had no track record of successful use." *Id.* at 142 (cleaned up).[1]

Even though Mr. Bucklew had failed at the first step, the *Bucklew* Court then went through the rest of the inquiry, providing a blueprint for how courts should conduct this analysis. The Court explained that, "if a prisoner can carry his burden of showing a readily available alternative," he then must "show that it would significantly reduce a substantial risk of severe pain." *Id.* at 143. The Court then evaluated the evidence regarding the State's lethal injection protocol and the pain it may cause Mr. Bucklew, and compared that evidence with that of the proposed alternative in order to determine if the latter would "would significantly reduce his risk of pain." *Id.* at 143-49. It found it would not. *Id.* at 149.

This Court sidestepped *Bucklew*'s directives, evaluating the State's current method while ignoring the question of the proposed alternative. The order dismissing

---

[1] In this case, by contrast, expert witness Dr. James S. Williams testified in detail on the feasibility and ready availability of execution by firing squad, including protocols that have been used to conduct multiple successful firing squad executions in the State of Utah.

Mr. Nance's claims asks only if "Georgia's protocol is substantially likely to result in his suffering an unconstitutional level of pain or discomfort," and does not consider his proposed alternative, firing squad, at all, instead looking at lethal injection in a vacuum. Doc. 157 at 21. This Court summed up its analysis in the conclusion to its dismissal order, announcing that:

> Plaintiff failed to show that he was likely to suffer severe pain cognizable under the Eight [sic] Amendment either because of the condition of his veins or his gabapentin use. Because Plaintiff failed to make this required showing, the Court has no need to address the argument that the firing squad is a feasible and readily available alternative that could significantly reduce his pain.

Doc. 157 at 23.

In neglecting to evaluate the risk of pain of the firing squad and comparing that risk with that of the State's lethal injection protocol, the Court misunderstood the governing law. Again, as the *Bucklew* Court made clear: "Distinguishing between constitutionally permissible and impermissible degrees of pain, *Baze* and *Glossip* explained, is a *necessarily comparative exercise*." *Bucklew*, 587 U.S. at 136; *see also Frazier v. Hamm*, 2025 WL 361172, at *12 (M.D. Ala. 2025) ("Thus, the Court will compare the Protocol with Frazier's proposed alternative to determine whether the alternative would significantly reduce a substantial risk of severe pain."). This Court never engaged in that comparison, instead wholly disregarding the firing squad as a viable alternative and analyzing the State's current protocol in isolation. *See* Doc. 157 at 23. Its failure to compare the two protocols to determine

whether lethal injection unnecessarily "superadds pain" for Mr. Nance was clearly erroneous. *See Bucklew*, 587 U.S. at 137. The Court should consequently alter its judgment and engage in the type of comparative analysis that is required here. As Mr. Nance argued in his post-trial briefing, D. 151 and 153, comparing the risk of pain posed by execution by firing squad to the risk of pain posed by the State of Georgia's current lethal injection protocols demonstrates that the State's chosen method of execution unnecessarily superadds pain in violation of the Eighth Amendment.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Michael Nance respectfully requests that this Court alter or amend the judgment issued against him by this Court and engage in the comparative analysis of the methods of execution presented at trial as required by applicable Supreme Court precedent.

Respectfully submitted this 14th day of March, 2025.

*/s/ Anna Arceneaux*
**Anna Arceneaux**
Georgia Bar No. 401554
anna.arceneaux@garesource.org
**Victoria Olender Hellstrom**
Georgia Bar No. 168312
victoria.olender.hellstrom@garesource.org
**GEORGIA RESOURCE CENTER**
104 Marietta St. NW, Suite 260
Atlanta, GA 30303
Telephone: (404) 222-9202

**Cory Isaacson**
Georgia Bar No. 983797
cisaacson@acluga.org
**Andrés López-Delgado**
Georgia Bar No. 552876
adelgado@acluga.org
**ACLU FOUNDATION OF GEORGIA**
P.O. Box 570738
Atlanta, GA 30357
Telephone (770) 415-5490

**John P. Hutchins**
Georgia Bar No. 380692
jhutchins@bakerlaw.com
**Jacqueline T. Menk**
Georgia Bar No. 728365
jmenk@bakerlaw.com
**Kristen Rasmussen**
Georgia Bar No. 135018
krasmussen@bakerlaw.com
**BAKER & HOSTETLER LLP**
1170 Peachtree Street NE, Suite 2400
Atlanta, GA 30309
Telephone: (404) 459-0050
Facsimile: (404) 459-5734

*Attorneys for Plaintiff Michael Wade Nance*

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the font and point selections approved by the Court in L.R. 5.1(C) because this document was prepared using Times New Roman 14-point font.

*Anna Arceneaux*

Anna Arceneaux
Georgia Bar No. 401554

*Attorney for Plaintiff*

8

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

This 14th day of March, 2025.

*Anna Arceneaux*

Anna Arceneaux
Georgia Bar No. 401554

*Attorney for Plaintiff*